IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WELLS FARGO ADVISORS, LLC,

    Plaintiff,

    v().

QUANTUM FINANCIAL PARTNERS LLC, et. al.,

    Defendants.

Case No. 15-9145-JAR-JPO

## MEMORANDUM AND ORDER

Plaintiff Wells Fargo Advisors, LLC ("Wells Fargo") filed this suit against Defendants Quantum Financial Partners, LLC ("Quantum") and Joel Jacobs for several claims, including copyright infringement. After a hearing, the Court issued a temporary restraining order, enjoining Defendants from using or displaying Wells Fargo's "Process Wheel."[1] Defendants then filed Motions to Compel Arbitration (Docs. 23 & 27), which are now before the court. These motions are fully briefed and the Court is prepared to rule. For the reasons set forth below, the Court grants Jacobs's motion and denies Quantum's motion.

**I.  Legal Standard**

    **A.  Federal Arbitration Act**

The Federal Arbitration Act ("FAA") reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."[2] The FAA reversed a longstanding judicial hostility to arbitration, favoring a presumption of arbitrability if

---

[1] Doc. 22. The "Process Wheel" can be found in Doc. 1-1 at 3.

[2] *AT & T Mobility LLC v. Concepcion*, 563 U.S. ——, 131 S. Ct. 1740, 1745 (2011) (citations and internal quotation marks omitted).

an agreement requires arbitration.[3]  "If a contract contains an arbitration clause, a presumption of arbitrability arises, particularly if the clause in question contains . . . broad and sweeping language."[4]  Any doubts concerning arbitrability of a dispute should be resolved in favor of arbitration.[5]  However, the presumption of arbitrability disappears when the parties dispute whether there is a valid and enforceable arbitration agreement in the first place.[6]

### B.    FINRA and its Rules

The Rules of the Financial Industry Regulatory Authority ("FINRA")[7] govern the scope of arbitration within the financial industry.  Rule 13200 provides "[e]xcept as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among" members, members and associated persons, or associated persons.

## II.   Facts

The Court will confine its discussion of the facts to those relevant to these motions to compel.  The following facts are undisputed: (1) Wells Fargo is a FINRA member; (2) Jacobs is an associated person under FINRA's Rules;[8] (3) Quantum is neither a member nor an associated

---

[3] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

[4] *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995); *see also Bellman v. i3Carbon*, LLC, 563 F. App'x 608, 613 (10th Cir. 2014).

[5] *LDS, Inc. v. Metro Can. Logistics, Inc.*, 28 F. Supp. 2d 1297, 1299 (D. Kan. 1998).

[6] *i3Carbon*, 563 F. App'x at 613 (citing *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir.2002); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998)).

[7] FINRA is the successor to the National Association of Securities Dealers, Inc. ("NASD").  For an explanation of FINRA's history, see *Orchard Sec., LLC v. Pavel*, No. 2:13-CV-00389-RJS, 2013 WL 4010228, at *1 n.2 (D. Utah Aug. 6, 2013).

[8] FINRA Rule 13100(a) defines "associated person" as "person associated with a member," which is defined in Rule 13100(r).  While it is unclear whether Jacobs meets the definitional criteria of subsections (1) or (2), the Rule expressly provides: "For purposes of the [Rules], a person formerly associated with a member is a person associated with a member."  In any event, Jacobs's status as an associated person is undisputed.

person; and (4) Wells Fargo's other, non-copyright claims stated in the Complaint against Jacobs are subject to FINRA arbitration.[9]

Three agreements between Wells Fargo and Jacobs are in the record: (1) an employment agreement;[10] (2) a memorandum of understanding ("MOU") concerning Jacobs's employment;[11] and (3) a Financial Consulting Agreement ("FCA") between Wells Fargo, Jacobs, and James Pekelder.[12] The MOU and FCA each contain an arbitration clause. The MOU's arbitration clause states that "all disputes, claims or controversies between [Jacobs] and [Wells Fargo] . . . that arise out of or in connection with employment or this agreement shall be resolved by arbitration."[13] The FCA's arbitration clause states:

> (16) Arbitration. Wells Fargo Advisors, Joel Jacobs and James Pekelder agree that any action instituted as a result of any controversy arising out of this Agreement, or as a result of any section interpretation thereof, shall be brought before the arbitration facility of the Financial Industry Regulatory Authority ("FINRA") to the exclusion of all others, unless the rules and/or the codes of FINRA provide otherwise. The parties agree that arbitration shall be the parties' exclusive remedy and that the results of such arbitration shall be final and binding upon them. Judgment upon any award rendered by an arbitration panel may be entered in any state or federal court of competent jurisdiction. Any controversy relating to your duty to arbitrate hereunder, or to the validity or enforceability of this arbitration clause, or to any defense to arbitration, shall also be arbitrated before FINRA.[14]

The employment agreement contains an intellectual property clause assigning to Wells Fargo the copyright of any intellectual property Jacobs created while a Wells Fargo employee.

---

[9] *See* Doc. 1. Wells Fargo offers to stay Counts 3–9 with respect to Jacobs, pending the resolution of the arbitration.

[10] Doc. 1-2, Ex. B. Wells Fargo describes the document as a "Copyright Agreement." Doc. 33 at 6 n.20.

[11] Doc. 1-5, Ex. E.

[12] Doc. 19-3.

[13] Doc. 1-5 at 7.

[14] Doc. 19-3 at 4, ¶ 16.

## II.     Discussion

Each Defendant filed a motion to compel arbitration, to which Wells Fargo responded in one brief.  Wells Fargo maintains its copyright claims against each Defendant are not subject to mandatory arbitration.  As to Quantum, Wells Fargo argues Rule 13200 does not mandate arbitration because Quantum is neither a member nor an associated person.  As to Jacobs, Wells Fargo argues (1) there was no agreement to arbitrate copyright infringement claims; and (2) Rule 13200 does not mandate arbitration because Jacobs's alleged copyright violation does not arise out of the "business activities" of either Wells Fargo or Jacobs.

### A.     Arbitration as to Quantum

The parties agree there is no agreement between Wells Fargo and Quantum to arbitrate, and Quantum is neither a member nor an associated person.  Because Quantum is neither, it cannot compel itself into arbitration.[15]  Quantum cites *McMahan Securities Co. v. Forum Capital Markets, L.P.* for the proposition that a non-member can join arbitration under FINRA's Rules.[16]  But *McMahan* does not help Quantum because it dealt with the old NASD rule, which contained the phrase "between or among members and/or associated persons, *and/or certain others*."[17]  FINRA Rule 13200 replaced the NASD rule, and eliminated the "and/or certain others" language.  Therefore, FINRA arbitration precludes parties who are not members or associated persons from compelling arbitration.[18]  While Quantum's argument appealing to the interests of

---

[15] *Brean Capital, LLC v. NewOak Capital LLC*, No. 651255/2014, 2014 WL 7269750 at *3 (N.Y. Sup. Ct. 2014) ("It is undisputed that NewOak is neither a FINRA member nor an Associated Person of NewOak C.M. Ergo, Rule 13200(a) is not a valid basis to compel Brean to participate in the Arbitration."); *see also Ayco Co. v. Frisch*, No. 1:11-CV-580 LEK/DRH, 2012 WL 42134, at *6 (N.D.N.Y. Jan. 9, 2012) (finding defendants could not compel non-FINRA-member Wells Fargo to arbitration based on FINRA's rules).

[16] 35 F.3d 82, 88 (2d Cir. 1994).

[17] *Id.* (emphasis added).

[18] *Brean Capital*, 2014 WL 7269750, at *4–5. Even if the "certain others" language applied, Quantum could only participate in arbitration—not compel it. *Id.* at *5 ("Additionally, while 'certain others' are *permitted* to

4

judicial economy and fairness is tempting, Quantum cites no case law compelling arbitration under Rule 13200 simply because the claims overlap, contain common questions of law and fact, or depend on (or derive from)—at least in part—the liability of another party.  Because the Court determines Quantum cannot compel arbitration, Quantum's Motion to Compel Arbitration is denied.

### B.    Arbitration as to Jacobs

#### 1.    Agreement to Arbitrate

Wells Fargo first contends there is no agreement to arbitrate copyright claims between it and Jacobs.[19]  As a general matter, Jacobs signed two contracts that contained arbitration clauses.  Both arbitration clauses contain the language "arising out of," which the Tenth Circuit interprets broadly.[20]  Wells Fargo argues those arbitration clauses did not cover *copyright* claims, but this argument is unpersuasive for several reasons.

First, the MOU's arbitration clause covers "*all* disputes, claims, or controversies . . . that arise out of or in connection *with employment* or this agreement."[21]  The Process Wheel was created by Jacobs (at least in part) while employed by Wells Fargo.  Upon creation, Jacobs's copyright to the Process Wheel automatically transferred to Wells Fargo pursuant to the intellectual property provision in Jacobs's employment contract.  That provision provides:

> I understand and agree that if I am employed by Wachovia, any product, process, method, invention, confidential information, trade secret, business list and any other intellectual property of any type that I create or develop in whole or in part in conjunction with my employment at Wachovia will at all times be the exclusive

---

participate in FINRA/NASD arbitrations, it is well settled that 'certain others' cannot *compel* arbitration.") (emphasis in original).

[19] Wells Fargo does not dispute the other claims against Jacobs in this case are subject to arbitration.  Doc. 33 at 5 n.18.

[20] *Williams v. Imhoff*, 203 F.3d 758, 766 (10th Cir. 2000).

[21] Doc. 1-5 at 7 (emphasis added).

property of Wachovia. I agree to take all actions reasonably necessary to vest ownership rights for such intellectual property in Wachovia.[22]

The broadness of the MOU's arbitration clause, combined with the intellectual property provision of Jacobs's employment contract, make it clear that Wells Fargo's contributory copyright claim arises out of or in connection with Jacobs's employment.

Second, Wells Fargo's copyright claim against Jacobs also arises out of the FCA. The FCA is a contract between Wells Fargo, Jacobs, and James Pekelder, who was also an employee of Wells Fargo and who signed Wells Fargo's original employment contract. The brochure and the Process Wheel appear to have been created for the working relationship that the FCA contemplated. Indeed, the brochure is entitled "PEKELDER, JACOBS & ROBERTS" and Wells Fargo's certificate of copyright registration identifies the title of the work to be copyrighted as "Wells Fargo Pekelder Brochure." Thus, the contributory copyright claim against Jacobs appears to arise out of this agreement as well.

Finally, the Court can infer Jacobs signed a "Uniform Application for Securities Industry Registration or Transfer," commonly referred to as Form U4, which is a contract between the regulatory organization (FINRA) and the individual registrant (Jacobs), because Jacobs signed the MOU.[23] The MOU states: "You will be required to obtain all licenses and registrations from the NASD, securities exchanges, state securities commissions, and such other regulatory bodies . . . Failure to obtain the Series 7 license will result in employment review and possible

---

[22] Doc. 1-2, Ex. B.

[23] *Valentine Capital Asset Mgmt., Inc. v. Agahi*, 94 Cal. Rptr. 3d 526, 533 (Cal. Ct. App. 2009) (discussing the inference of the parties' completion of Form U4). The Court can also infer a Form U4 exists in this case because Wells Fargo has compelled arbitration against other former financial advisors, citing and producing a signed Form U4. *See, e.g.*, *Griffis v. Wells Fargo Advisors, LLC*, No. 13 CV 8372, 2014 WL 3027683, at *2 (N.D. Ill. July 3, 2014); *French v. Wells Fargo Advisors, LLC*, No. 5:11-CV-246, 2012 WL 479961, at *1 (D. Vt. Feb. 14, 2012).

termination . . . ."[24]  In order to take the Series 7 license exam, an examinee must register with FINRA by submitting a "Form U4," which states in pertinent part:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction*.[25]

Thus, even if the two contracts Jacobs executed do not constitute agreements to arbitrate, this required agreement does.  The agreement also covers *any* dispute, which would cover copyright claims.  For all of these reasons, the Court finds there was an agreement to arbitrate between Wells Fargo and Jacobs and the agreement(s) cover copyright claims.

## 2. Arbitration under FINRA Rules

Wells Fargo also maintains there is no basis for compelling arbitration under FINRA Rule 13200.  It is undisputed that Wells Fargo is a FINRA member and Jacobs is an associated person under the Rules.  Given these undisputed facts, the key issue is whether, under Rule 13200, the copyright claim arises out of the business activities of either Wells Fargo or Jacobs.  The Court finds that it does.

Wells Fargo argues the copyright claim does not arise out of Wells Fargo's business activities or Jacobs's business activities *as an associated person*.  Specifically, Wells Fargo maintains that, because Jacobs's alleged contributory copyright violation was committed *after* he left Wells Fargo's employ, the violation arises out of the business activities of Jacobs and/or Quantum—not Wells Fargo.  Jacobs therefore committed the copyright violation in a capacity

---

[24] Doc. 1-5 at 1.

[25] *Valentine*, 94 Cal. Rptr. 3d at 532 (emphasis in original); *see also* FINRA, https://www.finra.org/sites/default/files/Forms_U4.pdf (last visited Aug. 19, 2015) (emphasis in original).  FINRA is an "SRO," or self-regulating organization.

7

other than *as an associated person of* Wells Fargo, a FINRA member.  This argument has several problems.

First, the copyright claim in Wells Fargo's Complaint is premised upon two facts: (1) Jacobs helped create the Process Wheel while employed by Wells Fargo and (2) Jacobs ceded the copyright to Wells Fargo pursuant to the terms of his employment contract.[26]  Thus, but for Jacobs helping to create the Process Wheel, Wells Fargo would have no claim of infringement. Indeed, had Jacobs not helped create the Process Wheel, he would not have known to ask his friend to obtain it from Wells Fargo for him.  The fact that Jacobs obtained (and provided to Quantum) the Process Wheel *after* he stopped working for Wells Fargo is immaterial because his alleged knowledge of Quantum's infringing activity would be based on his knowledge that Wells Fargo exclusively owned the copyright, which is based on the intellectual property provision in Jacobs's employment contract.

Second, Wells Fargo's reliance on *Valentine*'s interpretation of Rule 13200's phrase "business activities," is unpersuasive on these facts.  In *Valentine*, the court stated that

> [C]ommon sense dictates that [FINRA Rule 13200's] phrase "business activities of . . . an associated person" must have *some* limitation.  It certainly cannot include the activities of every possible business enterprise in which an individual, who happens to be an "associated person," might be engaged.  There is no indication in Rule 13200, and no extrinsic evidence presented by the parties, suggesting that FINRA intended to bring within the scope of FINRA arbitrations every dispute that an associated person might have in a business he or she pursues on the side, as a freelance photographer, coin collector, novelist, real estate agent, auto mechanic, or the like.
>
> Indeed, a variety of disputes, utterly unrelated to the securities industry, might arise between individuals who happen to be associated persons.  For example, a registered representative might also be a real estate agent who sells a home to another person who happens to be a registered representative.  Other registered representatives, engaged in the side business of collecting and selling art, might become embroiled in a dispute over the sale of a painting that one

---

[26] Doc. 1 at 4, ¶ 11.

claims to be fake.  These disputes would certainly arise out of the parties' business activities, but neither the parties nor FINRA would reasonably expect these private disputes to be appropriate for an arbitration established as part of the regulation of stock brokerage firms.[27]

This case does not involve the business activities of a party's side business over which another party is attempting to compel FINRA-arbitration.  Even if the Court adopted *Valentine*'s limitation that the claim(s) must arise out of the "business activities of an individual *as* an associated person of a FINRA member,"[28] the result would be the same.  Jacobs's post-employment business activities are alleged to squarely compete with Wells Fargo.[29]  And Defendants allege the Process Wheel directly relates to Wells Fargo's securities-related business.  In its Complaint, Wells Fargo states: "In 2013, Wells Fargo published a brochure containing a circular flow chart laying out Wells Fargo's philosophy and processes for developing an *investment* strategy centered around the needs of the individual client."[30]  The back of the brochure says "Wells Fargo Advisors is one of the nation's premier financial services firms."[31]  A graphic that conveys Wells Fargo's philosophy and process for developing an *investment strategy* for potential clients clearly relates to Wells Fargo's financial services—or, as Wells Fargo puts it in its brief, its exchange- or securities-related businesses.

Third, the Court notes that, at the temporary restraining order hearing, Wells Fargo stated it was losing customers as a result of the alleged copyright infringement.  It is therefore hard to

---

[27] *Id.* at 533–34.

[28] *Id.* at 535.

[29] This is why Wells Fargo initiated arbitration against Jacobs in February on all of the non-copyright-related counts against Jacobs stated in the Complaint.  *See* Doc. 1.  Wells Fargo admits FINRA contemplates arbitration between former employees and their FINRA-member employers for claims such as breach of contract or tortious interference of business relationships.  The fact that, here, the former employee also allegedly took a proprietary graphic and supplied it to his new employer for display on its website does not make the claim wholly unrelated to the employee's employment.

[30] Doc. 1 at 3, ¶ 10 (emphasis added).

[31] Doc. 1-1 at 1.

comprehend how the copyright violation allegations do not arise out of the business activities of Jacobs, as Wells Fargo could only be losing customers to an entity with which it *competes*. By way of example, if Quantum was a temporary-employment staffing agency, Jacobs's alleged copyright violation is unlikely to have harmed Wells Fargo because customers would not confuse a staffing agency offering people temporary jobs with a banking institution.[32] Wells Fargo cannot have it both ways: it is a business activity that is harming Wells Fargo, but it is not a business activity of an associated person under Rule 13200.

For these reasons, the Court finds Wells Fargo's contributory copyright claim against Jacobs arises out of the business activities of an associated person of a member under Rule 13200. Defendant Jacobs's Motion to Compel Arbitration is granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant Jacobs's Motion to Compel Arbitration (Doc. 23) is **GRANTED**; Defendant Quantum's Motion to Compel Arbitration (Doc. 27) is **DENIED**.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Court will contact the parties to schedule a telephonic status conference to discuss how the parties wish to proceed with the case. Topics of discussion will include the impact of this Order as it relates to Plaintiff's motion for preliminary injunction (Doc. 32) and whether the case should be stayed pending arbitration of Plaintiff's claims against Defendant Jacobs.

**IT IS SO ORDERED.**

---

[32] The Court makes no findings on the merits as to Wells Fargo's contributory copyright claim. Rather, the Court notes this as further evidence that the copyright claims against Jacobs arise out of the business activities of Jacobs *as an associated person* of FINRA-member Wells Fargo, and thus the claim belongs in arbitration along with the other claims undisputedly in arbitration.

Dated: August 25, 2015

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE